UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSBY WILFREDO ORANTES-HERNANDEZ, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>MERRICK B. GARLAND, Attorney General of the United States, et al.,<br><br>                    Defendants. | Case No.: 2:82-cv-01107-MEMF-VBKx<br><br>**ORDER GRANTING IN PART MOTION TO REOPEN DISCOVERY [ECF NO. 910]** |

Before the Court is Plaintiff Crosby Wilfredo Orantes-Hernandez's Motion to Reopen Discovery. ECF No. 910. The Court held oral argument on this matter on April 21, 2022. For the reasons stated herein, the Court GRANTS IN PART the Motion to Reopen Discovery.

**I.     Background**

On March 4, 1982, Plaintiff Crosby Wilfredo Orantes-Hernandez and several other named plaintiffs filed this action, challenging practices and procedures allegedly employed by the former Immigration and Naturalization Service ("INS") to detain, process, and remove Salvadoran nationals who had entered the United States. The Complaint named as defendants several agents and agencies

of the United States Government (collectively, "Government Defendants").[1] The named plaintiffs sued on their own behalf and on behalf of a class of similarly situated individuals. *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1491 (C.D. Cal. 1988) ("*Orantes II*"), *aff'd.*, 919 F.2d 549 (9th Cir. 1990).

On June 2, 1982, the Court granted the named plaintiffs' Motion for Provisional Class Certification as to the following class of persons:

> [A]ll citizens and nationals of El Salvador eligible to apply for political asylum under 8 U.S.C. § 1158 who (a) have been or will be taken into custody pursuant to 8 U.S.C. § 1357 by agents of the Immigration and Naturalization Service; or (b) subsequent to June 2, 1980, requested, or will in the future request, political asylum within the United States prior to being served with an order to show cause pursuant to 8 C.F.R. § 242.1, whose applications for asylum have not or will not be presented to a district director for adjudication in accordance with 8 C.F.R. § 208.8.

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 371–72 (C.D. Cal. 1982) ("*Orantes I*"). Subsection (b) of this class related to a count raised in the initial complaint that was subsequently abandoned. *Orantes II*, 685 F. Supp. at 1491. The Court noted that the class certification was modified accordingly to exclude this class. *Id.* As a result, the named plaintiffs brought suit on their own behalf and on behalf of a class of "all citizens and nationals of El Salvador eligible to apply for political asylum . . . who . . . have been or will be taken into custody . . . by agents of the [former INS]" (collectively, "the Orantes-Hernandez Plaintiffs").

On April 29, 1988, the Court issued a permanent injunction imposing prohibitions and affirmative obligations on the Government Defendants. *Id.* at 1511–13. In doing so, the Court made the following factual findings regarding conditions in El Salvador and Central American generally[2]: A substantial number of Salvadorans who flee El Salvador possessed good faith claims to asylum and a well-founded fear of persecution. People from a wide cross-section of Salvadoran society suffered human rights abuses at the hands of primarily Salvadoran military and security forces. The

---

[1] The Court notes that the phrase "Government Defendants" may refer to different agents and agencies of the United States Government throughout this Order, given that the specific parties defending the action changed over time. As one example, the INS ceased to exist under that name in March 2003, when the Department of Homeland Security (DHS) was created and inherited the INS's functions.

[2] The following details are taken from the Court's prior Order in *Orantes II*, 685 F. Supp. 1488.

persecution includes arbitrary arrest, detention, torture, beatings, rape, extra-judicial executions, among other abuses. The Salvadoran judicial system fails to investigate and punish violations of human rights, allows security forces to operate without legal restraint, and is incapable of providing protection to victims or potential victims of human rights abuses. A substantial number of Salvadorans flee persecution based on a political opinion imputed to them by the government or security forces. Salvadoran refugees voluntarily returning to El Salvador have been detained and imprisoned by Salvadoran authorities based on their suspected prior political opinions and activities.

The Court further concluded that "the INS engage[d] in a persistent pattern and practice of misconduct which deprives plaintiff class members of their constitutional right to due process and statutory right to apply for political asylum and withholding of deportation, and their right to have access to counsel and appropriate legal information about the deportation process." *Id.* at 1504–05. Such conduct arises "from INS policies, and forms a pattern and practice of illegal conduct which is approved, authorized and/or ratified by INS personnel at all times." *Id.* at 1505. These include a pattern and practice of previously "summarily removing Salvadorans from this country by obtaining their signatures on the voluntary departure form through intimidation, threats, and misrepresentation"; "pressuring Salvadorans to accept voluntary departure despite the existence" of a preliminary injunction enjoining such behavior; "pressuring or intimidating Salvadorans who remain detained after the issuance of an OSC to request voluntary departure or voluntary deportation to El Salvador"; "encouraging Salvadorans to accept voluntary departure [] and . . . discouraging them from pursuing political asylum claims"; "transferring detained Salvadorans irrespective of established attorney-client relationships"; and "fail[ing] to provide an adequate mechanism of class members to report . . . any misconduct by INS personnel." *Id.* at 1505, 1507, 1509.

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). 8 U.S.C § 1225. IIRIRA states that the Executive "shall . . . detain" certain aliens seeking admission into the United States pending removal proceedings. *Id.* § 1225(b)(2)(A). IIRIRA also allows for the return of certain individuals arriving by land from contiguous territories to the territories from which they entered the United States. *Id.* § 1225(b)(2)(C).

The *Orantes* injunction was subsequently modified on July 2, 1991 (adding four conditions that applied solely to one processing center), September 28, 2004 (granting parties' stipulation that Injunction "was not intended to prohibit ORR from transferring a class member who is an unaccompanied minor to a suitable youth facility or foster care home outside the district of apprehension with 7 days of apprehension" under certain circumstances), October 11, 2006 (in response to the Government Defendants' argument that the Injunction presented a facial conflict with IIRIRA), and July 24, 2007 (in response to the Government Defendants' motion to dissolve the Injunction). *See* ECF No. 855 ("Modified Consolidated Injunction" or "MCI" or "*Orantes* Injunction" or "Injunction"). The current version of the Injunction requires that the Government Defendants:

1) Refrain from "threats, misrepresentation, subterfuge, or other forms of coercion, or in any other way attempt[ing] to persuade or dissuade" class members from pursuing asylum claims;
2) Advise class members during processing of the right to pursue asylum, to request a deportation hearing, and to be represented by an attorney;
3) Provide class members, during processing, with telephone access and an accurate list of legal service providers who assist in immigration court proceedings;
4) Refrain from transferring "detained class members who are unrepresented by counsel from the district of their apprehension for at least seven (7) days";
5) Ensure that, if a represented class member is transferred out of the district, the class member is "returned to the district in which venue is set sufficiently in advance of any proceeding in order to allow the detainee adequate time to consult with counsel";
6) Provide class members with legal materials in English and Spanish, and ensure that detention center libraries are accessible to those who are detained; and
7) Ensure adequate access to counsel and paralegals, confidential meeting spaces, and telephones for individuals who are detained.

*See id.* ¶¶ 1–5, 7, 9, 11, 14.

On July 24, 2007, the Court reviewed the initial Injunction in response to the Government Defendants' motion to dissolve the injunction. In doing so, the Court considered whether the Government Defendants' refusal to provide advisals to Salvadorans detained at ports of entry violated the terms of the Injunction. *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 849–51 (C.D. Cal. 2007) ("*Orantes IV*"). The Government Defendants acknowledged that the class definition was sufficiently broad to include Salvadorans at ports of entry but argued that the Court has only ever construed the Injunction to apply "*between* ports of entry, not *at* ports of entry." *Id.* at 849. The Court concluded that "[t]he purpose of the injunction was to prevent the 'dire consequences' likely to result if Salvadorans were erroneously deprived of their right to apply for asylum. These dire consequences existed whether class members were apprehended at or between ports of entry. By unilaterally refusing to provide *Orantes* advisals to class members at ports of entry, and failing to seek clarification . . . as to whether this was consistent with the intent of [the Injunction], the government arguably violated the spirit of the injunction." *Id.* at 850. The Court further concluded that the Injunction was entered "to remedy the INS' 'persistent pattern of misconduct violative of plaintiffs' rights' to apply for asylum." *Id.* at 844 (quoting *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) ("*Orantes III*")).

In 2014, the Orantes-Hernandez Plaintiffs filed a Motion for a Temporary Restraining Order seeking access to interview class members held at the Nogales Processing Center in Nogales, Arizona. ECF No. 883 ("TRO Motion"). The Court ultimately held that a TRO was an improper vehicle for the Orantes-Hernandez Plaintiffs to obtain the relief sought but converted the motion into one for post-injunction discovery and granted relief. ECF No. 897 ("2014 Discovery Order"). The 2014 Discovery Order did not grant post-injunction discovery but rather was narrowly focused on the issue of class counsel's right of access to class members in government custody. *Id.* at 24 ("Plaintiffs' request is not a typical discovery request because it does not seek to compel the government to provide information, but rather to compel the government to allow counsel to talk with their own clients."). The Court concluded that the Government Defendants were obligated to provide access to class members detained in its facilities and ordered the Government Defendants to allow class counsel to interview class members at the facility in question. *Id.* at 36. The parties

resolved the issue of discovery of additional information through the meet-and-confer process; as a result, the Court has never addressed the issue of what right the Orantes-Hernandez Plaintiffs have to post-injunction discovery. *Id.*

According to the Government Defendants, the Migrant Protection Protocols ("MPP") implement 8 U.S.C. § 1225(b)(2)(C), which was enacted as part of IIRIRA and provides that when a noncitizen arrives "on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the [Secretary of DHS] may return the [noncitizen] to that territory pending a proceeding under section 1229a of this title." Opp'n at 1. In January 2019, the Government Defendants first implemented the MPP, authorizing immigration officers to "exercis[e] [their] prosecutorial discretion regarding whether" to return to Mexico certain classes of noncitizens arriving by land from Mexico. *Id.* (quoting 84 Fed. Reg. 6811 (Feb. 28, 2019)). According to the Orantes-Hernandez Plaintiffs, under MPP, the United States Government returns individuals claiming asylum at the United States–Mexico border back to Mexico to await a hearing in U.S. immigration court. Mot. at 4. The Orantes-Hernandez Plaintiffs further allege that under MPP, immigration authorities initially detain asylum seekers in the United States for two days or fewer, place them in removal proceedings under the Immigration and Nationality Act, and then return them to Mexico where they remain for the duration of their proceedings. *Id.*

On January 20, 2021, the Biden Administration suspended all new enrollments into the MPP Program, began a phased wind-down, and attempted to formally terminate the program on June 1, 2021. *Id.* at 5. However, on August 13, 2021, the United States District Court for the Northern District of Texas ruled that the Department of Homeland Security ("DHS") had not sufficiently explained its termination of MPP and ordered the government to reimplement MPP "in good faith." *Id.* at 5–6 (quoting *Texas v. Biden*, 2:21-CV-067-Z, 2021 WL 3603341 (N.D. Tex. Aug. 13, 2021)).

On October 29, 2021, DHS issued a new MPP termination memorandum elaborating on the reasons for termination and began to reinstate MPP. *Id.* at 6. MPP is currently in effect. *Id.* MPP is under consideration at the United States Supreme Court, with oral argument scheduled for April 26, 2022. *Id.* (citing *Biden v. Texas*, No. 21-954, 2022 WL 497412 (Feb. 18, 2022)). The Government Defendants have represented that the government seeks to terminate the program, noting the pending

case before the United States Supreme Court. *See Biden v. Texas*, No. 21-954, 2022 WL 497412 (Feb. 18, 2022).

On February 23, 2022, the Orantes-Hernandez Plaintiffs filed the instant Motion to Reopen Discovery. *See generally* Mot. The Motion was fully briefed on April 7, 2022. *See* ECF Nos. 940 ("Opp'n"), 943 ("Reply"). A hearing on the Motion was held on April 21, 2022.

On April 21, 2022, the Court held a hearing on the instant Motion. During the hearing, counsel for the Government Defendants asserted that reopening of discovery as to current and potential future violations of the Injunction is inappropriate in part because as of the date of the hearing, there were currently no class members in the current iteration of MPP. Moreover, counsel for the Government Defendants agreed to give notice to the Court and to the Orantes-Hernandes Plaintiffs' counsel in the event that the government resumed enrolling class members in MPP in the future. On April 25, 2022, the Government Defendants filed a Notice informing the Court that the daily report dated April 22, 2022, now reflects that one class members has been placed into MPP. ECF No. 947.

## II. Legal Standard

The Ninth Circuit has recognized that courts have "inherent power" to enforce their orders, including by granting post-judgment discovery to determine compliance with judgments and orders. *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008). Where a moving party seeks a post-judgment order permitting discovery, "the kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance." *Id.* at 1034. In particular, "[i]f significant questions of noncompliance have been raised, appropriate discovery should be granted." *Id.* Such motions are considered analogous to Rule 56(f) requests, *see id.*, and require "[v]ery little proof of noncompliance." *See* Rutter Group Practice Guide: Federal Civil Trials and Evidence ¶ 20:438.3.

## III. Discussion

The Orantes-Hernandez Plaintiffs argue that the Court should grant their Motion to Reopen Discovery because MPP raises significant questions regarding the Government Defendants' compliance with the transfer and conditions-of-confinement provisions of the injunction. Mot. at 9–

13. The Government Defendants argue that the Orantes-Hernandez Plaintiffs have failed to raise sufficient questions regarding the government's compliance with the injunction because: (1) the transfer provision of the *Orantes* injunction does not apply to returns to Mexico under MPP; (2) class members in MPP are not in "detention" or "custody" while in Mexico; (3) no class member has been placed in MPP since its reimplementation in December 2021; and (4) MPP presents a "new set of conditions" not present at the time of the injunction.

### A. MPP Raises Significant Questions Regarding Compliance with the Transfer Provisions of the Injunction

The Orantes-Hernandez Plaintiffs contend that the Government Defendants failed to comply with the Injunction's transfer provisions. Mot. at 11 (citing MCI ¶ 11(a), (b)). The transfer provisions require that the Government Defendants: (1) refrain from transferring "detained class members who are unrepresented by counsel from the district of their apprehension for at least seven (7) days"; and (2) ensure that, if a represented class member is transferred out of the district, the class member is "returned to the district in which venue is set sufficiently in advance of any proceeding in order to allow the detainee adequate time to consult with counsel." MCI ¶ 11(a), (b). According to the Orantes-Hernandez Plaintiffs, the Government Defendants generally transfer asylum seekers in MPP to Mexico within *two* days after apprehension, require them to remain in *de facto* and regulatory detention, and bring them back to the U.S. "at best *only hours* before their hearings." Mot. at 11–12 (emphasis added).[3]

#### i. The Transfer Provision of the *Orantes* Injunction Likely Covers a Return to Mexico Under MPP

The Government Defendants argue that the transfer provision of the *Orantes* Injunction does not govern the return of individuals to Mexico during the pendency of their removal proceedings

---

[3] In support of these allegations, the Orantes-Hernandez Plaintiffs cite to Memorandum from Katherine Culliton-Gonzalez, Officer for Civil Rights and Civil Liberties, and Susan Mathias, Assistant Gen. Counsel, U.S. Dep't of Homeland Sec., Office for Civil Rights and Civil Liberties, to U.S. Customs and Border Protection et al., *Complaints Related to the Implementation of the Migrant Protection Protocols (MPP)* at 4 (Jan. 29, 2021), https://www.dhs.gov/sites/default/files/publications/mpp-redacted-recommendation-memo-01-29-21.pdf ("Culliton-Gonzalez Memo").

under 8 U.S.C. § 1225(b)(2)(C). Opp'n at 9–11. In support of their argument, the Government Defendants point to the text of the MCI, which was modified in 2006 to state that "[t]he term 'transfer' as used in this paragraph refers to the relocation from one detention facility to another of class members who are held in detention pending the initiation or resolution of their immigration proceedings." MCI at ¶ 11(b).

The Orantes-Hernandez Plaintiffs contend that the Government Defendants have taken the language of the MCI out of context. Quoting the rest of the paragraph, the Orantes-Hernandez Plaintiffs argue that the modification was made for the sole purpose of clarifying that expedited removals are not "transfers" under the *Orantes* Injunction. Reply at 3 (citing MCI at ¶ 11(b) ("The restrictions of [the transfer] provision do not apply to the transportation of individuals who are subject to final orders of removal including expedited removal orders, *where the transportation is for the immediate removal from the country, rather than for continued detention*." (emphasis added))). As a result, they argue, this language "does not, and cannot, operate to exclude MPP transfers of class members to Mexico from *Orantes* protections." *Id.* at 4. Moreover, they argue that the spirit of the Injunction, which sought to prevent the same harms produced by MPP, compels an interpretation that covers MPP transfers. *Id.* at 5.

When determining whether an injunction has been violated, a court must "observe the objects for which the [Injunction's] relief was granted and . . . find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014) (quoting *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942)) (noting that "[t]he fact that [an] injunction's terms did not specifically forbid [particular actions] does not immunize [the actor] from liability"). In this very case, the Court has recognized that "[t]he purpose of the injunction was to prevent the 'dire consequences' likely to result if Salvadorans were erroneously deprived of their right to apply for asylum." *Orantes IV*, 504 F. Supp. 2d at 850 ("By unilaterally refusing to provide *Orantes* advisals to class members at ports of entry, and failing to seek clarification . . . as to whether this was consistent with the intent of [the Injunction], the government arguably violated the spirit of the injunction."); *see also id.* at 844 ("Judge Kenyon . . . entered the

1  injunction for another reason as well—to remedy the INS' 'persistent pattern of misconduct violative
2  of plaintiffs' rights' to apply for asylum." (quoting *Orantes III*, 919 F.2d at 558)). As was the case in
3  *Sea Shepherd*, even if the Injunction's terms do not specifically state that the Injunction covers MPP
4  transfers, the "spirit of the injunction" suggests that the Injunction may cover MPP transfers of class
5  members to Mexico.

6        Moreover, the modified language regarding what constitutes a transfer is limited by its
7  context. In other words, the situation presented by the instant case—one in which individuals are
8  returned to a contiguous country while awaiting their removal hearing—was never contemplated. It
9  is further revealing the Injunction has been amended multiple times since IIRIRA, which provided a
10 statutory basis for the government's contiguous-territory-return authority, was enacted in 1996.
11 Under the statutory canon of *expressio unius est esclusio alterius*, "the incorporation of one statutory
12 provision to the exclusion of another must be presumed intentional." *Botosan v. Paul McNally*
13 *Realty*, 216 F.3d 827, 832 (9th Cir. 2000); *see also United States v. Crane*, 979 F.2d 687, 691 n.2
14 (9th Cir. 1992) ("The maxim of statutory construction, '*expressio unius est esclusio alterius*'
15 provides that '[w]hen a statute limits a thing to be done in a particular mode, it includes the negative
16 of any other mode.'" (quoting *Botany Worsted Mills v. United States*, 278 U.S. 282, 289 (1929)).
17 The same principle appears instructive here. Although the modified language discussed above was
18 introduced, at no point was the Injunction amended to explicitly exclude the transfer of asylees using
19 the contiguous-territory-return authority. This increases the likelihood that such a situation was
20 never contemplated or, alternatively, suggests that the Court intentionally meant to include the return
21 of asylees to contiguous territories within the definition of "transfer" under the Injunction. As a
22 result, the Court finds that the language of the Injunction's transfer provision cannot be read to
23 exclude a return to Mexico under MPP.

          ii.   <u>Class Members Returned to Mexico Under MPP Are in Detention or Custody and Are Covered by the *Orantes* Injunction</u>

26       The Government Defendants also contend that class members returned to Mexico are neither
27 in detention nor in custody and, as a result, are not covered by the *Orantes* Injunction. However, the
28 government's own regulations establish that individuals required to remain in Mexico pending a

removal hearing under MPP "shall be considered detained for a proceeding within the meaning of section 235(b) of the [Immigration and Nationality Act]." 8 C.F.R. § 235.3(d). The Government Defendants counter that the definitions of "detention" and "custody" under the Immigration and Nationality Act, Code of Federal Regulations, and federal case law differ from the definitions of these words as used in the Injunction. Opp'n at 11–13. Although it is plausible for the Government Defendants to argue that these definitions differ, particularly given the many changes in policy and circumstances over time, this only further suggests that "significant questions" exist as to whether the Government Defendants have violated the Injunction. In any event, the Court finds that individuals required to remain in Mexico pending a removal hearing under MPP are considered detained and therefore covered by the terms of the Injunction.[4]

Ultimately, the Court finds that the Orantes-Hernandez Plaintiffs' allegations raise "significant questions" regarding the Government Defendants' compliance with the Injunction's transfer provisions.

### B. MPP Raises Significant Questions Regarding Compliance with the Conditions-of-Confinement Provisions of the Injunction

The Orantes-Hernandez Plaintiffs further contend that the Government Defendants failed to comply with the Injunction's conditions-of-confinement provisions. Mot. at 12–13. The conditions-of-confinement provisions require that the Government Defendants: (1) provide class members, during processing, with telephone access and an accurate list of legal service providers who assist in immigration court proceedings; (2) provide class members with legal materials in English and Spanish, and ensure that detention center libraries are accessible to those who are detained; and (3) ensure adequate access to counsel and paralegals, confidential meeting spaces, and telephones for individuals who are detained. MCI ¶¶ 5–8. According to the Orantes-Hernandez Plaintiffs, by the Department of Homeland Security's own admission, MPP-subject asylum seekers "lacked stable

---

[4] The Court notes that it is unclear whether *all* of the Injunction's provisions are meant to apply to this new context. Ultimately, however, the Court need not address that question at this moment.

housing, employment, . . . internet access," and adequate confidential spaces in which to prepare for their hearings. Mot. at 13.[5]

During the hearing, the Government Defendants appeared to concede that they may not have been able to comply with certain requirements in the conditions-of-confinement provision with respect to their domestic activities.

The Court finds that these allegations by the Orantes-Hernandez Plaintiffs, in addition to the Government Defendants' concession, are sufficient to raise "significant questions" regarding the Government Defendants' compliance with the Injunction's conditions-of-confinement provisions with respect to their domestic activities.[6]

### C. MPP Presents Similar Conditions as Those That Initially Gave Rise to the Injunction

Next, the Government Defendants contend that the issues that gave rise to the *Orantes* Injunction are fundamentally different from those presented by MPP. In particular, the Government Defendants argue that "[t]he *Orantes* Injunction protects the rights of Salvadorans who, in 1988, were found susceptible to targeted coercion by INS officers" whereas MPP "is a recent program that applies to certain migrants who enter the United States through Mexico—not just Salvadorans." The Court finds this distinction insufficient. In support of their argument, the Government Defendants point to a prior order in this case, in which the Court stated that "the court must consider the conditions that led Judge Kenyon to enter the injunction in the first instance, *not a new set of conditions* that might warrant the entry of an injunction were they presented to a court today." *Orantes IV*, 504 F. Supp. 2d at 843. The Government Defendants also note that "[i]n the interest of judicial economy and equitable results," the Court should consider the "substantial past and ongoing litigation concerning MPP." Opp'n at 15–16 (citing *Doe v. Mayorkas*, No. 20-55279 (9th Cir.); *West*

---

[5] In support of this contention, the Orantes-Hernandez Plaintiffs cite to U.S. Dep't of Homeland Sec., *Explanation of the Decision to Terminate the Migrant Protection Protocols* at 17–18, 20–21 (Oct. 29, 2021), https://www.dhs.gov/sites/default/files/publications/21_1029_mpp-termination-justification-memo.pdf ("Explanation of Termination Memo").

[6] Given that "significant questions" have been raised as to whether the Government Defendants have complied with the Injunction domestically, the Court need not decide whether all of the conditions-of-confinement provision apply to conditions in Mexico.

*Virginia v. DHS*, No. 2:21-cv-022 (N.D. W.Va.); *Vasquez v. Mayorkas*, No. 1:20-cv-10566 (D. Mass.); *Cruz v. DHS*, No. 19-5359 (D.C. Cir.); *Immigrant Defenders v. DHS*, No. 2:21-cv-0395 (C.D. Cal.); *Immigrant Defenders v. Wolf*, No. 2:20-cv-09893 (C.D. Cal.); *Nora v. Wolf*, No. 20-0993 (D.D.C.); *Adrianza v. Trump*, No. 20-03919 (E.D.N.Y.); *Turcios v. Wolf*, No. 1:20-cv-93 (S.D. Tex.)). Moreover, MPP is under consideration at the United States Supreme Court, with oral argument scheduled for April 26, 2022. *Id.* (citing *Biden v. Texas*, No. 21-954, 2022 WL 497412 (Feb. 18, 2022)).

These arguments, however, go more to the question of what ultimately constitutes a violation and what relief should be granted or how the United States should proceed, if at all, with MPP. Either way, these arguments do not change the fact that the Orantes-Hernandez Plaintiffs have raised significant questions regarding whether the Government Defendants have complied with the Injunction with respect to past conduct.

Moreover, the Orantes-Hernandez Plaintiffs conceded during the hearing that they are not entitled to discovery with respect to current and future violations and expressed an intent to revisit their request related to such violations in future enforcement proceedings. This Court, as described below, will ask the parties to meet and confer with respect to discovery concerning current and future violations. The Government Defendants stated that, pending the Supreme Court's decision, the government will likely attempt to wind down the program entirely and would welcome a future discussion in this Court regarding how best to comply concurrently with the Supreme Court's decision and the *Orantes* Injunction. As a result, neither the pending Supreme Court case nor any other pending litigation regarding MPP have any impact on the Court's decision today.

**D. The Scope of Discovery Shall Be Limited Only to the List Presented by the Orantes-Hernandez Plaintiffs**

In support of their Reply, the Orantes-Hernandez Plaintiffs submitted a copy of correspondence sent by their counsel to the Office of Immigration Litigation, dated November 19, 2021. The correspondence included a list of information sought by the Orantes-Hernandez Plaintiffs:

1. The names, A numbers, contact information (including last address to which immigration case information was sent), and case statuses of all class members previously or presently subject to MPP;
2. Any guidance, protocols, or description of other steps that Defendants took to comply with the *Orantes* Injunction when subjecting class members to MPP, including:
    a. Any measures Defendants took to ensure that unrepresented Salvadoran asylum seekers were not transferred out of the jurisdiction of apprehension within 7 days of initial processing;
    b. Records reflecting the length of time class members were held in custody prior to being transferred to Mexico;
    c. Any measures Defendants took to ensure that class members had adequate access to telephones and lists of legal services providers during processing and records reflecting the provision of such access;
    d. Any measures Defendants took to ensure class members were brought to the United States with sufficient time to prepare their cases with counsel;
    e. Any measures Defendants undertook to ensure private meeting spaces for preparation with attorneys, and records reflecting the provision of access to these spaces;
    f. Any documentation of the Defendants' efforts to provide class members with the *Orantes* advisal during processing, and any records documenting that the advisal was timely provided to class members on a consistent basis;
    g. Any measures Defendants have taken to process *Orantes* class members as part of the MPP wind-down, including the number of motions to reopen that DHS has thus far joined with class member respondents and the status of those motions.
3. In the event that Defendants intend to go forward with subjecting new class members to MPP, identify clearly and with specificity all measures Defendants are taking, have taken, and will take to ensure that a reinstituted MPP will not result in class members experiencing impeded access to counsel or being discouraged, impeded, coerced or otherwise prevented from effectively pursuing their claims. Please include records that identify and substantiate the following:
    a. All steps the Defendants are taking to ensure class members are sufficiently safe, sheltered, nourished, and medically assisted to prevent coercing class members into abandoning their claims.
    b. All steps the Defendants are taking to ensure that unrepresented detained class members are not transferred before seven days have passed.
    c. All steps the Defendants are taking to ensure class members have adequate access to counsel, whether remotely or in person, to fully and fairly prepare for their cases with counsel, including but not limited to access to telephones, lists of legal services providers, and meeting spaces during processing, for non-refoulement interviews, and otherwise prior to any transfer from the jurisdiction of apprehension.
    d. All steps the Defendants are taking to ensure that class members receive the *Orantes* advisal and are afforded all other rights and protections under the Injunction.

Wolson Decl., Ex. 1 at 8–9. During the hearing, the Orantes-Hernandez Plaintiffs confirmed that the list accurately outlines the discovery they seek in conjunction with the instant Motion. Given the dispute between the parties and the circumstances surrounding this case, the Court finds it appropriate to cabin the discovery that the Court is granting at this time based on the Orantes-Hernandez Plaintiffs' list.

Because the Orantes-Hernandez Plaintiffs conceded at the hearing—in light of the facts then known to them—that they were not entitled to discovery with respect to current or future potential violations at this time, the Court declines to grant the discovery sought in Section 3 above, along with its sub-bullets. Moreover, with respect to the following requests, the Orantes-Hernandez Plaintiffs agreed to limit their requests for the time being to such information regarding the Government Defendants' conduct domestically: (1) any measures Defendants took to ensure that class members had adequate access to telephones and lists of legal services providers during processing and records reflecting the provision of such access; and (2) any documentation of the Defendants' efforts to provide class members with the *Orantes* advisal during processing, and any records documenting that the advisal was timely provided to class members on a consistent basis.

This Court, as described in the following section, will order the parties to meet and confer with respect to discovery concerning current and potential future violations, in light of the new information provided by the Government Defendants regarding the enrollment of a class member into MPP.

### E. Because There Was No Evidence to Support Allegations of Current or Future Violations of the Injunction, Discovery Is Limited Only to Investigation into Past Violations

Finally, the Government Defendants argued in their briefing and at the hearing that no class members are currently enrolled in MPP and as such, there is no possible *Orantes* violation to investigate. During the hearing on this motion, the Orantes-Hernandez Plaintiffs conceded that they were not entitled to discovery at this time with respect to any current or potential future violations of the Injunction in light of the confirmation by counsel for the Government Defendants that no class members were currently enrolled in MPP as of the date of the hearing. Indeed, the Orantes-

Hernandez Plaintiffs provided no evidence of current or ongoing violations of the Injunction. Nor did their alleged "likelihood" that the Government Defendants would resume implementation of MPP raise "significant questions" sufficient to justify reopening of discovery as to whether the Government Defendants are currently violating or may in the future violate the terms of the Injunction. As a result, the discovery granted in this Order is limited only to that concerning alleged violations of the Injunction under the prior iteration of MPP.

As discussed previously, circumstances have changed since the hearing on this Motion. Specifically, the Government Defendants have notified the Court that a class member has been enrolled in MPP. In light of these changed circumstances, the Court invites the parties to meet and confer with respect to the scope of discovery regarding current and potential future violations of the Injunction. In doing so, the parties are to keep in mind the Court's discussion in this Order regarding the meaning of "transfer" and "detained." The parties shall meet and confer and file within two (2) weeks from the date of this Order either: (a) a joint stipulation as to the scope of discovery with respect to current and potential future violations of the Injunction; or (b) in the event they are unable to agree as to the proper scope of discovery, a proposed schedule for supplemental briefing regarding the Orantes-Hernandez Plantiffs' request to reopen discovery with respect to current and potential future violations of the Injunction.

### IV. Conclusion

In light of the foregoing, the Court hereby GRANTS IN PART the Motion to Reopen Discovery and hereby ORDERS that the Orantes-Hernandez Plaintiffs may proceed with discovery only with respect to the following:

1. The names, A numbers, contact information (including last address to which immigration case information was sent), and case statuses of all class members previously or presently subject to MPP;
2. Any guidance, protocols, or description of other steps that Defendants took to comply with the *Orantes* Injunction when subjecting class members to MPP, including:

a. Any measures Defendants took to ensure that unrepresented Salvadoran asylum seekers were not transferred out of the jurisdiction of apprehension within 7 days of initial processing;

b. Records reflecting the length of time class members were held in custody prior to being transferred to Mexico;

c. Any measures Defendants took *domestically* to ensure that class members had adequate access to telephones and lists of legal services providers during processing and records reflecting the provision of such access;

d. Any measures Defendants took to ensure class members were brought to the United States with sufficient time to prepare their cases with counsel;

e. Any measures Defendants undertook to ensure private meeting spaces for preparation with attorneys, and records reflecting the provision of access to these spaces;

f. Any documentation of the Defendants' efforts *domestically* to provide class members with the *Orantes* advisal during processing, and any records documenting that the advisal was timely provided to class members on a consistent basis;

g. Any measures Defendants have taken to process *Orantes* class members as part of the MPP wind-down, including the number of motions to reopen that DHS has thus far joined with class member respondents and the status of those motions.

The Court further ORDERS that the parties shall meet and confer and file—within two (2) weeks from the date of this Order—either:

1. A joint stipulation as to the scope of discovery with respect to current and potential future violations of the Injunction;

2. A joint proposed schedule for supplemental briefing regarding the Orantes-Hernandez Plantiffs' request to reopen discovery with respect to current and potential future

Case 2:82-cv-01107-MEMF-JPR   Document 949   Filed 04/27/22   Page 18 of 18   Page ID #:1858

violations of the Injunction, if they are unable to reach agreement as to the scope of discovery.

IT IS SO ORDERED.

Dated: April 27, 2022

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge